T.C. Memo. 1996-381


UNITED STATES TAX COURT


INEZ MEILAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 104-95.                    Filed August 19, 1996.


<u>Kathleen E. Giancana</u> and <u>Carol E. Remy</u>, for petitioner.

<u>Patricia Riegger</u> and <u>Jody Tancer</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7443A(b)(3) of the Code and Rules 180, 181, and 182.  All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes, together with penalties, as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
| --- | --- | --- |
| 1989 | $5,390 | $944 |
| 1990 | 4,046 | 779 |

By Amendment to Answer, respondent asserted penalties under section 6663(a) for 1989 and 1990 in the amounts of $4,042 and $3,034, respectively.

The issues for decision are: (1) Whether petitioner understated her income from tips for the years in issue; (2) whether petitioner is liable for fraud penalties pursuant to section 6663(a); and (3) if not liable for the fraud penalties, whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a).

Some of the facts have been stipulated, and are so found. Petitioner resided in Astoria, New York, when her petition was filed.

For clarity and convenience, our findings of fact and opinion have been combined.

During the years in issue, petitioner worked full-time as a waitress at Sandomenico New York, Inc. (Sandomenico), an upscale, expensive restaurant in New York City, New York. The principal issue in this case is the amount of tip income earned by petitioner at this job.

On her 1989 Federal income tax return, petitioner reported tip income of $7,200. Petitioner failed to include in income $7,931 of tips allocated to her by Sandomenico pursuant to section 6053(c)(3) and noted in Box 6 of her Form W-2. On her 1990 return, petitioner reported tip income of $13,147, which included the $347 of tips allocated to her by Sandomenico pursuant to section 6053(c)(3).

In 1989 and 1990, Sandomenico's directly tipped employees included captains, waiters and waitresses, and busboys. After each shift (either lunch or dinner), the directly tipped employees would pool all the charged and cash tips received. The next day, two of the employees would allocate and distribute the tips pursuant to a point system (described in greater detail below). They allegedly recorded the amount of tips received in notebooks, along with the resulting allocation and distribution among the employees who worked that shift. Petitioner claimed these notebooks were kept on the premises of Sandomenico.

During the initial audit of petitioner's returns by respondent, petitioner did not produce any personal records of her tip income. Later in the audit, petitioner produced one of the above mentioned notebooks, purportedly covering the period of April 28, 1990 to December 31, 1990. Other than this notebook, during the audit petitioner did not mention, nor did she produce, any personal records of her tip income.

Respondent prepared analyses of Sandomenico's Forms 8027, Employer's Annual Information Return of Tip Income and Allocated Tips, for purposes of reconstructing the directly tipped employees' tip income for 1989 and 1990. The Forms 8027 reflect Sandomenico's total charged tips, total charged receipts, total tips reported by its directly tipped employees, gross receipts from food and beverage operations, the number of directly tipped employees, and an allocated tip amount of 8 percent of its gross receipts. These Forms 8027 show that $558,227 and $390,004.49 of charged tips had not been declared to Sandomenico by the directly tipped employees for 1989 and 1990, respectively.

Respondent's determinations of petitioner's unreported tip income are based on Sandomenico's allocation of gross receipts among its directly tipped employees, prepared pursuant to section 6053 and the regulations thereunder. The allocations were done by Mr. Hemang Patel (Mr. Patel), Sandomenico's then bookkeeper. Mr. Patel explained that he allocated gross receipts on a daily basis among directly tipped employees using a point system of 10 points for captains, 8 points for waiters and waitresses, and 5 points for busboys. Sandomenico's directly tipped employees used this same point system to divide and distribute the pooled tips among themselves on the day after a particular shift.

Mr. Patel would total the points of all the employees that worked a shift, and then divide the total gross receipts for that shift by the number of points. Mr. Patel would then take the

resulting number and multiply it by the number of points for each employee to arrive at that employee's total gross receipts for the shift. For example, if 3 captains (30 points), 8 waiters and waitresses (64 points), and 3 busboys (15 points) worked a shift, the total would be 109 points. If the restaurant made $5,000 in gross receipts that shift, $45.87 ($5,000 divided by 109) would be allocated for each point. Thus, a waiter or waitress would be allocated gross receipts of $366.96 ($45.87 times 8 points) for that shift by Mr. Patel.

Based on the tip allocation spreadsheets prepared by Mr. Patel, the rounded-off percentage of gross receipts attributed to petitioner by Sandomenico was approximately 5 percent for 1989, and approximately 7 percent for 1990.

Respondent determined petitioner had $26,511 and $21,396 of unreported tip income for 1989 and 1990, respectively, using the following method. For each year in issue, respondent multiplied the total charged tip amount from Sandomenico's Form 8027 by the percentage of total gross receipts Sandomenico attributed to petitioner. From this figure, respondent subtracted the tip amount petitioner reported on her return. This was the amount respondent determined was unreported charged tip income for petitioner. Cash tips were figured by subtracting the total charged receipts from the gross receipts reported on Sandomenico's Form 8027, which resulted in the total cash receipts amount. Respondent then multiplied this figure by 12

percent, to come up with a total cash tip amount. Respondent's agent testified that the rate of 12 percent was used for cash tips "to be as conservative and, hopefully, equitable as possible, since usually the charge [tip] rates range from 15 to 20 percent". Respondent once again used petitioner's percentage of total gross receipts as allocated by Sandomenico, and multiplied the total cash tips figure by petitioner's percentage of total gross receipts to arrive at petitioner's cash tips. Respondent then added the unreported charged tips to the cash tips to determine the amount of tip income petitioner failed to report.

Petitioner conceded that she underreported her tip income on her 1989 and 1990 Federal income tax returns. However, petitioner contends that she earned tip income of $22,026 and $18,988 for 1989 and 1990, respectively, rather than the amounts determined by respondent.

It is well established that tips are includable in gross income under section 61(a). Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. T.C. Memo. 1981-659; sec. 1.61-2(a)(1), Income Tax Regs. Under section 6001 a taxpayer is required to keep sufficient records to enable respondent to compute the taxpayer's correct tax liability. In the absence of such records, respondent may use any method of computation that will clearly reflect the income of the taxpayer. Sec. 446(b); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965).

Petitioner did not produce any personal records of her tip income during respondent's audit of her returns. However, at trial, petitioner was able to introduce purported personal records of her tip income for 1989 and 1990. She testified that she received her tips in cash from the restaurant on the day following the shift when the tips were earned. Attached to the cash was a small, white paper with the amount of the tips and petitioner's name written on it. Petitioner alleged that she went home, recorded the amount of tip money she received on a yellow sheet of paper, and then discarded the original white paper. Petitioner testified she recorded her tips on these yellow sheets every night or at least every other night. Petitioner kept these yellow sheets in a manilla envelope in which she kept all her Sandomenico records.

After inspection of the yellow sheets introduced by petitioner, we do not believe that these alleged daily records were contemporaneous and accurate records of the tip income she received in 1989 and 1990. The uniformity and consistency of the handwriting, as well as the appearance of the yellow sheets, lead us to the conclusion that the entries on the sheets were written about the same time, rather than on a daily basis over a 2-year period. Indeed, when testifying about the amount of allocated tips on the Forms W-2 issued to her by Sandomenico for the years in issue, petitioner admitted "I had no idea what I made." We can only conclude that had petitioner kept these yellow sheets

contemporaneously, she would have had an "idea" of what she "made" in tips for each year.

Petitioner also attempts to rely on 3 notebooks kept by the tipped employees of Sandomenico as an accurate daily record of her tip income. Respondent introduced 5 of these notebooks at trial, purportedly covering from sometime in 1988 to the beginning of 1991. As mentioned, petitioner claims that these notebooks were maintained by the waitstaff of Sandomenico. The day after each shift, two employees allegedly would record the amount of tips received in the notebook, along with the amounts to be distributed to the employees who worked that shift.

Respondent's audit of the 5 books shows that the total tips listed under petitioner's name are $22,409 and $19,150 for 1989 and 1990, respectively. Petitioner disputes certain of the entries under the surname "Meilak", alleging that other Meilaks also worked during the years in issue. Thus, petitioner asserts that the total tips listed under petitioner's name are $21,825 and $19,015 for 1989 and 1990, respectively.

An examination of these books reveals that the entries in 2 of the books, purportedly daily records for June 13, 1989 to December 31, 1989 (Exhibit J), and January 2, 1990 to April 27, 1990 (Exhibit I), could not have been written in either 1989 or 1990. The cover of Exhibit J has a copyright date of 1993. A representative of Mead Corporation, the manufacturer of the 2 notebooks that are Exhibits J and I, testified that Exhibit J was

not available to the public until after October 1993. Mead's representative also testified that based on the design of the cover, the earliest Exhibit I would have been available for retail sale was the second half of 1991. Due to the noncontemporaneous nature of these 2 notebooks, petitioner did not "rely" on Exhibits J and I as original records.

The handwriting of different persons, including petitioner's, appears in Exhibits J and I. Petitioner guessed that these notebooks were copied from the originals, but she could not recall why they were recopied or when they were recopied. She also could not recall when she rewrote her portion. When further queried about the 2 notebooks, petitioner asserted they may have been recopied because the notebooks "could have been torn." Additionally, she claimed that "We had a couple of leaks in the building, because the restaurant is underneath a building, and if somebody had them in the locker, they could have gotten wet and that's why we'd have to rewrite them."

Though only Exhibits J and I were clearly shown to be noncontemporaneous, we do not accept the notebooks for the years in issue as accurate and contemporaneous records of petitioner's tip income. Petitioner did not explain the discrepancies between the amounts reported on petitioner's alleged personal records, the yellow sheets, and the amounts recorded in the notebooks. Moreover, respondent's audit of the notebooks reveals that the total of the charged and cash tips reflected in the notebooks for

each year in issue is less than the charged tips alone as reported by Sandomenico on the Form 8027 for each year. Due to the inadequacy of the records produced by petitioner, it became incumbent upon respondent to reconstruct petitioner's income for the years in issue.

When reconstruction of a taxpayer's income is necessary, respondent has great latitude in the method of reconstruction used. Catalano v. Commissioner, 81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984). The method of reconstruction is sufficient if the reconstruction is reasonable in light of all of the surrounding facts and circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). This Court and other courts have accepted the use of formulas in the reconstruction of tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. per curiam T.C. Memo. 1979-3 and Lombardo v. Commissioner, T.C. Memo. 1979-11. A taxpayer may, however, point out areas or specific instances in which the method used by respondent fails to reflect his or her true income. Miller v. Commissioner, 237 F.2d 830, 838 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-112.

Petitioner argues that the amounts allocated to her by respondent are inherently erroneous because the gross receipts allocated to her by Sandomenico are too high. Petitioner asserts Sandomenico employed numerous directly tipped employees who were

"illegal" aliens. She argues her allocative share of gross receipts is distorted by the fact that these illegal aliens did not appear on the payroll, were not included on the Forms 8027, and were not allocated gross receipts by Mr. Patel.

We are not persuaded by petitioner's protestations that illegal aliens adversely affected her allocation of gross receipts. Several employees whom she stated were "illegal" were in fact allocated gross receipts by Mr. Patel for the years in issue. Petitioner has not persuaded us that the percentage of gross receipts allocated to her by Mr. Patel for the years in issue was wrong.

Petitioner also contends that respondent's formula fails to reflect her true tip income because Sandomenico allegedly kept approximately 2.7 percent of all charged tips to cover the cost of fees imposed by the credit card companies. Petitioner failed to furnish adequate proof with respect to this point. Assuming, arguendo, that this contention was true, we believe respondent's formula has sufficient leeway to encompass it.

Petitioner further attacks respondent's formula by claiming that after each lunch shift and dinner shift, the directly tipped employees would give $20 and $40, respectively, to the "pantry" employees. Again, we are satisfied that respondent's conservative formula would encompass any tip sharing that occurred between the directly tipped employees and the pantry employees.

Upon consideration of the record, we conclude the method used by respondent to determine petitioner's unreported tip income was reasonable. Thus, petitioner has failed to satisfy her burden of proving error in respondent's determination of her 1989 and 1990 tip income. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Accordingly, we sustain those determinations.

We next turn to the question of whether petitioner is liable for fraud penalties under section 6663(a) for both 1989 and 1990. Respondent must prove by clear and convincing evidence that petitioner is liable for the fraud penalty. Sec. 7454(a); Rule 142(b). Respondent must meet her burden of proving fraud through affirmative evidence; fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Respondent must show clearly that petitioner intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Fraud cannot be found if the circumstances only create a suspicion of its existence. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). The mere failure to report income is not sufficient to establish fraud. Petzoldt v. Commissioner, supra.

Based on our review of the record, we are not convinced that the underpayment of tax for each year at issue is due to fraud on the part of petitioner. We conclude that respondent has not proven by clear and convincing evidence that petitioner is liable for the section 6663(a) fraud penalty for 1989 and 1990.

Respondent determined that petitioner is liable for accuracy-related penalties under section 6662(a) for both 1989 and 1990. Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment that is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c). Respondent's determinations are presumed correct, and petitioner bears the burden to prove she is not liable for the accuracy-related penalties under section 6662(a). Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner conceded that she substantially underreported her income from tips on her Federal income tax returns for 1989 and 1990. The record shows that petitioner maintained inadequate records of her tip income for those years. Moreover, petitioner admitted she did not check her income tax returns for accuracy.

Petitioner has failed to demonstrate that she was not negligent or that she had a reasonable basis for underreporting her tip income. Petitioner has not satisfied her burden of proof, and accordingly, is liable for the accuracy-related penalty under section 6662(a) for both 1989 and 1990. We must sustain respondent on this issue.

In conclusion, we have considered all the arguments made by the parties and, to the extent not discussed above, find them to be without merit. To reflect the foregoing,

Decision will be entered for respondent as to the deficiencies and the section 6662(a) penalties, and for petitioner as to the section 6663(a) penalties.